`1`IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Case No. 2:05-CV-1178-WKW-DRB** |
| **v.** | ) | **(Case No.: 2:04-cr-0169-A)** |
| | ) | |
| **HORACE MILTON BLACK** | ) | |

## REPORT TO THE COURT AND RESPONSE TO ORDER

_____**COMES NOW** the undersigned counsel and files this Report to the Court and Response to the Court's Order of June 1, 2006 (D.E. 17).

### I.    Response to Order of June 1

1.    In response to the direction that the Federal Defender show cause on or before June 8, 2006 as to why she should not be sanctioned for contempt for failing to comply with the court's instructions directed in an Order issued March 17, 2006 (D.E. 16), the undersigned states:

a.    Until receiving the Court's Order of June 1, 2006, the undersigned was unaware of the Court's Order of Friday, March 17, 2006.

b.    Although it appears that the Federal Defender office received the Court's order of March 17, in that some reference to a deadline for filing in a 2255 matter related to Horace Black was posted on the office calendar for May 26, 2006, no copy of the Order was provided to the undersigned.

c.    In addition, the undersigned was out sick on March 20, which would have been the Monday following the issuance of the Court's order, and the date on which the Order likely was electronically served on undersigned's office.

d.    When, on May 26,  the undersigned observed the deadline reference on the office calendar for May 26, 2006, the undersigned mistakenly assumed that this matter had been

addressed. This assumption was based in part on the fact that in October 2004, the office of undersigned counsel was relieved by this Court as counsel for Mr. Black, due to a conflict, and substitute CJA counsel was appointed. Therefore, undersigned assumed that the 2255 included allegations against this office and that said allegations had been directed to the appropriate attorney.

e.     This assumption was not correct. Undersigned regrets this error. It was not the intent of this Office to ignore or to fail to comply with an order of this Court and the undersigned apologizes for any inconvenience to the Court, Mr. Black or counsel.

## II.     The Federal Defender has a conflict in representing Mr. Black

2.     Because of the conflict of interest between this office and Mr. Black referenced in the Motion to Withdraw filed on October 25, 2004, the office of the Federal Defender cannot represent Mr. Black on this civil matter and respectfully requests, through a motion filed contemporaneously with this pleading, that CJA attorney Pate DeBardelaben be appointed to represent Mr. Black.

## III.     Proceedings on the criminal charge

3.     In compliance with this Court's order of March 17, undersigned states that a review of the proceedings in the Case No. 2:04-cr-0169-A, the related criminal case against Mr. Black, establishes the following events in his criminal case:

a.     Mr. Black was arrested on a criminal complaint for the charge of armed bank robbery, on August 9, 2004. (D.E. 1.)

b.     On August 11, 2004, the Federal Defender Office was appointed to represent Horace Milton Black, with respect to criminal charges he faces in Case No. 2:04-cr-0169-A, and Joseph Van Heest was assigned to represent Mr. Black. (D.E. 8, 9.)

c.     An indictment was filed on August 17, 2004 (D.E. 13), which charged Mr.

Black with armed bank robbery (Count 1) and with brandishing a firearm in furtherance of a crime of violence (Count 2); by statute, the offense charged in Count 2 is required to be punished by no less than seven years, 18 U.S.C. § 924(c)(1)(A)(ii), and such sentence is to be imposed consecutively to any other conviction, 18 U.S.C. § 924(c)(1)(D)(ii).

        d.       Mr. Van Heest discovered that a conflict had developed between the Office of the Federal Defender and Mr. Black which required counsel to withdraw from further representation of Mr. Black.

        e.       On October 25, 2004, Mr. Van Heest filed a motion to withdraw from Mr. Black's representation and for the Court to appoint Terry Smyly, a CJA panel attorney, to represent Mr. Black in all further proceedings. (D.E. 24.)

        f.       On October 27, 2004, as requested by undersigned counsel's office, the Court appointed Mr. Smyly to represent Mr. Black. (D.E. 25, 26.)

        g.       On January 12, 2005, the United States Supreme Court issued its opinions in *United States v. Booker,* 543 U.S. 220 (2005) and *United States v. Fanfan*. These opinions held that the United States Sentencing Guidelines were advisory only.

        h.       On January 24, 2005, a Consent to Enter Guilty Plea before a Magistrate Judge and a **sealed** plea agreement were filed with the Court. (D.E. 28, 29.) According to Minutes of the proceeding, the plea included a guilty plea to Count 1 of the indictment and an agreement that Count 2 would be dismissed at sentencing. (D.E. 30.) A Report and Recommendation concerning the plea were filed **under seal** on January 25, 2005. (D.E. 31.)

        i.       On February 9, 2005, an Order was entered setting the matter for sentencing on April 12, 2005. (D.E. 35.)

j.    On April 7, 2005, Mr. Black's appointed counsel Terry Smyly filed a Motion to Withdraw Guilty Plea and a Brief in support of that motion. (D.E. 37, 38.)  The Brief asserted the following in support of the Motion to Withdraw the Plea:

> His plea agreement was open-ended (the defendant simply agreed to be sentenced under the guidelines) because at the time *Booker/Fanfan* was pending before the Supreme Court but had not been decided and no one knew what was going to happen.  Since there was no agreed-upon specific sentence, he necessarily retained the right to appeal any application of the sentencing guidelines he believed to be in error.  The Supreme Court has now decided *Booker/Fanfan* and in so doing has held that the sentencing guidelines are advisory only which effectively negates the defendant's right to appeal sentencing issues under his plea agreement.  Consequently, there has been a material change in the law which substantially adversely impacts the defendant's appellate rights under his plea agreement and he should be allowed to withdraw his plea if he so desires.

(D.E. 38, page 1.)

k.    On April 8, 2005, the Court directed the United States to file a response to the Motion to Withdraw Guilty Plea by April 11 and set the matter for hearing on April 12, indicating that if the Motion was denied, then the sentencing would proceed at that time.  (D.E. 39.)

l.    On April 11, 2005, the United States filed a Response to the motion (D.E. 41), a motion for credit for acceptance of responsibility to be given to Mr. Black (D.E. 40), and, **under seal**, a motion for a downward departure (D.E. 36).  (See references to this document in D.E. 42 and docket entries on April 12, 2005.)

m.    The Government's response described the plea agreement in this case as including a promise by the government to file a motion for downward departure of at least three levels for cooperation and a promise by the defendant to be sentenced under the Sentencing Guidelines.  (D.E. 41, paragraph 1.)  The Government's response further described the plea

4

agreement as containing an appeal waiver by the defendant on all issues except an upward departure from the applicable guideline range. (D.E. 41, paragraphs 2, 4, 5.) The Government opposed the motion. (D.E. 41, paragraph 7.)

n.    On April 12, 2005, the Court conducted a hearing on the Motion to Withdraw Guilty Plea. (D.E. 42.) Minute entries for that hearing indicate that the Motion was pursued against the advice of counsel. At D.E. 42, page one, the Minutes state: "Against the advice of his attorney, the Defendant stated he wanted to withdraw his guilty plea."

o.    Following denial of the Motion to Withdraw Guilty Plea, the Court conducted the sentencing hearing. Minute entries for that hearing indicate that defendant or defense counsel made, and the Court overruled, objections to the application of the Guidelines for career offender. At D.E. 42, page 1, the Minute states, as to two different objections, that the objection "as to the enhancement for classification as a career offender was DENIED and OVERRULED."

p.    The Government's motions to dismiss Count 2, for a downward departure, and for a reduction in criminal offense level due to acceptance of responsibility, were granted. (See Docket.)

q.    On April 14, 2005, Judgment was entered confirming that Mr. Black received a sentence of 140 months on Count 1. (D.E. 43.)

r.    According to the Execution of Judgment, Mr. Black arrived at the Federal Correctional Institution in Estill, South Carolina on June 28, 2005. (D.E. 44.)

s.    On August 17, 2005, Mr. Smyly filed his CJA 20 voucher form, with a request for payment for his services in this matter. (D.E. 45.)

t.    The record of 2:04-cr-0169-A does not indicate that any Notice of Appeal was

ever filed.

### IV.    Proceedings on the civil action to set aside the conviction

4.    A review of the proceedings in this present case,  No. 2:05-CV-1178-WKW-DRB,

the related civil case to vacate Mr. Black's conviction, establishes the following:

a.    Mr. Black filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence By a Person in Federal Custody (D.E. 1-1) on December 12, 2005, with an attached

memorandum of law, which was styled Motion to Vacate, Correct or Set Aside Sentence Pursuant

to 28 U.S.C. § 2255  (D.E. 1-2).

b.    On December 15, 2005, the Court directed the United States to file a response

to the motion and directed Mr. Smyly to file an affidavit responding to the ineffective assistance

allegations.  (D.E. 2.)

c.    On January 4, 2006, Mr. Smyly filed an affidavit, which stated that he had met

with Mr. Black following sentencing and Mr. Black had advised him that he did not want to appeal.

(D.E. 3.)

d.    On January 11, 2006, the United States filed a reply to the motion, which

conceded that the motion was timely and that Mr. Black's pleadings and Mr. Smyly's affidavit

directly contradicted each other, but asserted that an evidentiary hearing was not necessary.  (D.E.

4-1.)

e.    On January 13, 2006, the court issued an Order allowing Mr. Black to reply

to the United States' Reply Brief.  (D.E. 5.)

f.    On January 17, Mr. Black filed a motion to supplement his claims of

ineffective assistance of counsel, either currently or after a direct appeal had been litigated.  (D.E.

7.)

        g.     On January 18, the Court entered an Order directing Mr. Black to amend his motion with any new claims of ineffective assistance of counsel.  (D.E. 8.)

        h.     On January 30, 2006, Mr. Black filed a motion requesting a transcript of his sentencing hearing, in order to file it with the Court as part of his response to the Government.  (D.E. 9.) The Court conditionally denied this motion on February 1, 2006, providing that this order would be reconsidered if Mr. Black "provide[d] the court with an explanation of his need for the sentencing transcript."  (D.E. 10.)

        i.     On February 16, 2006, Mr. Black filed an Affidavit in response to Mr. Smyly's affidavit.  (D.E. 12.)

        j.     On February 16, Mr. Black also filed a motion for continuance, requesting additional time to file an amendment to his original motion.  (D.E. 13.)  The Court granted this request.  (D.E. 14.)

        k.     On March 10, 2006, Mr. Black filed a Motion to Amend his prior motion, which alleged additional issues of ineffective assistance of counsel.  (D.E. 15.)

**V.**     **Statement of Claims**

5.     A review of Mr. Black's pleadings and the procedural records indicates that facts may exist, in support of Mr. Black's assertion that he was denied his Sixth Amendment right to effective assistance of counsel and was prejudiced thereby, which demonstrate that Mr. Black was provided ineffective assistance of counsel in the advice and conduct of counsel in relation to his plea agreement, his motion to withdraw his guilty plea, his sentencing, and his appeal:

        A.     Mr. Black "received ineffective assistance of counsel at the time of sentencing

7

and or on direct appeal because counsel failed to follow the requests of Petitioner before sentencing." (D.E. 1-2, page 1.)

       B.     Mr. Black was "Denied Effective Assistance of Counsel" because he was told by the Court that he could appeal; he directed his attorney, Terry R. Smyly, to appeal the Court's sentencing decision; Mr. Smyly "assured movant that he would appeal;" no appeal was pending when Mr. Black checked with the Eleventh Circuit; "(a)fter petitioner contacted the attorney he was told that there were no appealable issues;" and "Counsel failed to file an Anders Brief." (See D.E. 1-1, page 5, paragraph 12(a); D.E. 1-1, page 5, paragraph 12(b); D.E. 1-1, page 14; D.E. 1-2, page 2.)

       C.     Mr. Black's counsel was ineffective because he failed to obtain the records of Mr. Black's prior state conviction, including the record of his state conviction guilty plea, to support the argument that the prior conviction was in fact for simple possession of a controlled substance, and thus did not support the career offender sentencing enhancement imposed on Mr. Black at his federal sentencing pursuant to U.S.S.G. § 4B1.1. (D.E. 15, page 1.)

       D.     Mr. Black's counsel was ineffective because he failed to challenge the sentencing enhancements imposed on the basis of a state conviction imposed in the absence of an attorney, when Mr. Black was 17 years old. (D.E. 15, pages 2, 3.)

       E.     Mr. Black's counsel was ineffective because he failed to seek a downward departure on the basis of overstatement of criminal history, where sentencing enhancements were imposed on the basis of a state conviction imposed in the absence of an attorney when Mr. Black was 17 years old and for a simple possession conviction. (D.E. 15, pages 2, 3.)

       F.     Mr. Black's counsel was ineffective because he failed to advocate effectively

for Mr. Black's Motion to Withdraw Guilty Plea.

       G.     If the Court determines that the plea agreement entered by Mr. Black prohibited him from pursuing an appeal, Mr. Black's counsel was ineffective in advising him to enter into such an agreement.

       H.     Mr. Black's counsel was ineffective because he failed to raise on direct appeal the argument that Mr. Black's sentence violated the Sentencing Guidelines.

       I.     Mr. Black's counsel was ineffective because he failed to raise on direct appeal the argument that Mr. Black's sentence violated his Sixth Amendment right to be sentenced only on the basis of facts admitted under oath by the defendant or found beyond a reasonable doubt by a jury.

       J.     Mr. Black's counsel was ineffective because he failed to raise on direct appeal the argument that Mr. Black should have been permitted to withdraw his guilty plea.

       K.     If the Court determines that Mr. Black's counsel advised and persuaded Mr. Black against pursuing an appeal, Mr. Black's counsel was ineffective in providing such advice.

     **VI.**    **Facts in support of claims**

    6.     Mr. Black asserted and/or would show the following facts in support of his claims:

       a.     Mr. Black was told by the Court that he had a right to appeal.

       b.     Mr. Black directed his counsel to file and pursue an appeal.

       c.     Mr. Black's counsel agreed to file and pursue an appeal.

       d.     Mr. Black tried to contact Mr. Smyly through collect phone calls and through calls by a third party, Nora Byrd, but was unsuccessful.

       e.     Mr. Black contacted the U.S. Court of Appeals for the Eleventh Circuit directly, based on others' advice, and learned that there was no appeal filed.

      f.     After learning that there was no appeal on file with the Eleventh Circuit, Mr. Black again tried to contact Mr. Smyly through three-way calls by Nora Byrd.

      g.     When Mr. Black reached Mr. Smyly, his counsel told Mr. Black that "there was no appeal being filed because he saw no appealable issues."

      f.     Mr. Black's counsel did not file an *Anders* brief.

 (See D.E. 1-1, page 5, paragraph 12(a); D.E. 1-1, page 5, paragraph 12(b); D.E. 1-1, page 14; D.E. 1-2, page 2; D.E. 12, pages 1, 2.)

      g.     At sentencing, there was a "dispute concerning the Career Offender provision enhancement" on Mr. Black's sentence; Mr. Smyly failed to obtain and present existing records which supported Mr. Black's arguments;  and Mr. Smyly failed to file or pursue any motions for downward departure on the grounds of overstatement of criminal history.  (D.E. 1-2, page 4.)

      h.     There was a dispute concerning whether or not Mr. Black should be permitted to withdraw his guilty plea; the pleading filed in support of that motion demonstrated a misunderstanding of the terms of the plea agreement;  and Mr. Smyly improperly informed the Court that this motion was made against his advice.

      i.     Mr. Black was informed by the Court that he could "still ask on appeal that the sentence imposed be done so under the auspices of the *Blakley* standard," in the event that *Blakely v. Washington*, 542 U.S. 296 (2004) was found to apply to the Guidelines or to this case. (D.E. 1-2, page 4.)

      j.     Mr. Black intended  "to preserve his review of the sentence itself for plain error on direct [appeal], even though Petitioner waived his objections to the claims of *Blakely* at sentencing."  (D.E. 1-2, page 4.)

k.      The existence of his guilty plea, his plea agreement, the strength of the evidence against him, and/or the fact that he received a sentence "far less than he likely would have received had he gone to trial" do not affect whether or not use of or reliance on a prior conviction as a sentencing enhancement violates the United States Sentencing Guidelines, the Sixth Amendment, or the Fifth Amendment right to Due Process.

### VII.   Concessions by the United States

7.      The United States concedes the following:

a.      That Mr. Black's motion is timely filed.  (D.E. 4-1, page 4.)

b.      That "the filings in this case produce a situation where this Court must determine whether the pleadings filed by Black or Smyly are truthful."  (D.E. 4-1, page 6.)

### VIII.   Facts in support of United States' position

8.      The United States may assert the following, in support of its position:

a.      Terry Smyly met with Mr. Black at the Montgomery City Jail following Mr. Black's sentencing, "either later that afternoon or the following day."  (D.E. 3.)

b.      Terry Smyly advised Mr. Black that an appeal would not be successful in achieving a lower sentence, in light of his guilty plea, his plea agreement, the strength of the evidence against him, and the fact that he received a sentence "far less than he likely would have received had he gone to trial."  (D.E. 3.)

c.      Mr. Black "specifically advised [Mr. Smyly] that he did not want to appeal." (D.E. 3.)

d.      Mr. Black "understood that Smyly's representation in his case had concluded," because Mr. Black contacted the Eleventh Circuit, instead of Terry Smyly, to inquire into the status

of an appeal.  (D.E. 4-2, page 6.)

Respectfully submitted,

s/Christine A. Freeman
**Christine A. Freeman**
**FEDERAL DEFENDERS**
**MIDDLE DISTRICT OF ALABAMA**
201 Monroe Street, Suite 407
Montgomery, AL 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
TN BPR 11892

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2006, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to A. Clark Morris,

Assistant United States Attorney, and I will provide by mailing copies to Terry Smyly and Horace

Black.

Respectfully submitted,

s/Christine A. Freeman
**Christine A. Freeman**
**FEDERAL DEFENDERS**
**MIDDLE DISTRICT OF ALABAMA**
201 Monroe Street, Suite 407
Montgomery, AL 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
TN BPR 11892